IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-cv-47

| | |
|---|---|
| Chase Manhattan Mortgage Co., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Earl Kelley Lane, Executor of the Estate )<br>of Lucile H. Lane, )<br>)<br>Defendant, )<br>Third-Party Plaintiff, )<br>)<br>vs. )<br>)<br>Nations Title Agency, Inc., Nations Title )<br>Agency of the Carolinas, Inc., and Nations )<br>Holding Company, Inc., )<br>)<br>Third-Party Defendants, )<br>)<br>vs. )<br>)<br>Lois Lane Rowe, )<br>)<br>Fourth-Party Defendant. )<br>) | ORDER |

THIS MATTER is before the Court upon Earl Kelley Lane's Motion for Default Judgment (Doc. No. 122). For the reasons set forth herein, the Court GRANTS default judgment to Defendant Earl Kelley Lane, Executor of the Estate of Lucile H. Lane ("Executor") against Third-Party Defendant Nations Title Agency of the Carolinas, Inc. ("NTA-C").

**BACKGROUND**

This suit began as an action by Plaintiff Chase Manhattan Mortgage Company ("Chase") against Executor to collect on a deed of trust held by Chase in connection with a mortgage refinance

loan of $219,000 Chase issued to Lane in May 2005. Executor impleaded NTA-C, Nations Title Agency, Inc. ("NTA"), and Nations Holding Company ("NHC")–alleged alter egos of Chase's title agent in the transaction with Lane–as third-party defendants, claiming wanton and willful negligence, violation of the North Carolina Good Funds Settlement Act ("NCGFSA") under N.C.G.S. § 45A-4, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C.G.S. § 75.1-1 *et seq.*, based on allegations of unauthorized practice of law and violations of North Carolina insurance law. Chase filed crossclaims against these Third-Party Defendants. At no time did NTA-C file a responsive pleading or make any other written submissions or appearances before the Court, although a former member of NHC's board of directors answered questions at the 30(b)(6) deposition of NTA-C (Doc. No. 97, Ex. D), which was also attended by an attorney on NTA-C's behalf. Following Executor's motion, the Clerk of Court entered default against NTA-C on July 10, 2009.

With the exception of NTA-C, all other parties to the original action entered a settlement agreement under which Executor received $175,000, reserving his right to pursue the claims against NTA-C. As a result, the Court entered an order granting the parties' joint motion to dismiss on June 24, 2010. (Doc. No. 116.) With default entered against NTA-C and all other claims resolved by settlement, Executor now moves for entry of default judgment against NTA-C, seeking actual damages of $224,000, attorneys' fees and costs of $160,044.99, punitive damages of $672,000, and prejudgment interest of $18,067.29 plus $49.10 per day from June 16, 2010, until entry of judgment.

## ANALYSIS

**A.     Default Judgment**

Federal Rule of Civil Procedure 55 provides that, upon entry of default, a party seeking default judgment for a sum not based solely on computation must apply to the court. Fed. R. Civ.

P. 55(b)(2). "If a party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Id. "[C]ourts have broadly construed the word 'appear,' allowing 'appearances by implication' where there is an 'objective manifestation on the part of the defendant or counsel to defend the action,'" Starr Consulting, Inc. v. Global Resources Corp., No. 1:06CV586, 2007 WL 4380101, at *3 (M.D.N.C. Dec. 11, 2007) (quoting Trust Co. Bank v. Tingen-Millford Drapery Co., 119 F.R.D. 21, 22 (E.D.N.C. 1987)).

Having received entry of default Executor is entitled to default judgment on his third-party claims because NTA-C has neither appeared before the Court, nor otherwise shown intent to defend. Although a former officer of NTA-C and counsel appeared at the Rule 30(b)(6) deposition of NTA-C, no representative then or since has indicated NTA-C's intent to defend, thus notice of Executor's motion is not reasonably required. Nevertheless, Executor, out of an abundance of caution, noticed NTA-C's registered agent, counsel from the 30(b)(6) deposition, and purported general liability insurer of the instant motion on or before June 25, 2010, more than seven days prior to the Court's July 6, 2010, hearing on the motion.

From the well-pleaded factual allegations in the complaint, affidavits, and other evidence presented before the Court, Executor has established entitlement to relief, and is hereby granted default judgment on all claims against NTA-C.

**B.      Damages**

On issuance of default judgment, North Carolina courts "have consistently followed the rule that the relief to be granted does not depend upon that asked for in the complaint, but upon whether the matters alleged and proved entitle the complaining part[y] to the relief granted." Meir v. Walton, 170 S.E.2d 166, 168 (N.C. App. 1969). "The party seeking damages must prove them . . . to a

reasonable certainty. While the claiming party must present relevant data providing a basis for a reasonable estimate, proof to an absolute mathematical certainty is not required." State Props., LLC v. Ray, 574 S.E.2d 180, 188 (N.C. App. 2002) (internal citations omitted).

*i.  Actual damages and attorneys' fees and costs for violation of the NCGFSA*

The North Carolina Good Funds Settlement Act ("NCGFSA") provides that at the close of any real estate transaction involving a single-family dwelling, "[t]he settlement agent shall cause recordation of the deed . . . the deed of trust or mortgage, or other loan documents required to be recorded at settlement. The settlement agent shall not disburse any of the closing funds prior to . . . recordation." N.C.G.S. § 45A-4. A violator is liable for the injured party's actual damages and reasonable attorneys' fees and costs. N.C.G.S. § 45A-7.

Executor has pled facts, supplemented by additional evidence (e.g., Doc. 61-2, NTA-C's "Tracking Points" on Lane's Chase mortgage transaction) establishing that NTA-C was Chase's settlement agent for Lane's refinance, that NTA-C negligently failed to record the deed of trust and a related quitclaim deed from Lane, and that closing funds were nonetheless disbursed. Because violation of the statute is deemed admitted by default, NTA-C is liable for negligence per se as to Executor's damages and attorneys' fees and costs. Executor has supplied appraisals from April 2007 (around the time of Lane's death) and January 2008 (the time when Executor believes the subject property reasonably would have sold if not for the title dispute), each valuing the property at $440,000. (Doc. No. 119.)

Executor's claimed actual damages of $224,000 are based on this appraisal value of $440,000 less $213,671.79, the principal owed to Chase at the time of default. (Chase Aff., Doc. No. 82-2.) Counsel for Executor has provided billing records to support an award of attorneys' fees and costs of $160,044.99 (Doc. No. 118, ¶ 6, Exs. A, B.) The Court has reviewed these records and

finds them reasonable. Plaintiff has therefore proven damages of $224,000 and attorneys' fees and costs of $160,044.99 to a reasonable certainty.

    ii.    *Prejudgment Interest on Actual Damages*

It is within the Court's discretion to award prejudgment interest. Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir. 1993). Awarding prejudgment interest "serves the legitimate goals of making a party whole, or compensating the injured party for the loss of the use of money he would otherwise have had." Marlen C. Robb & Son Boatyard & Marina, Inc., v. Vessel Bristol, 893 F. Supp. 526, 540 (E.D.N.C. 1994); see also EEOC v. Liggett & Myers Inc., 690 F.2d 1072, 1074 (4th Cir. 1982). Courts have held that a district court should apply state law when determining the rate of prejudgment interest in a case where diversity is the only ground for subject matter jurisdiction. U.S. v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940-41 (4th Cir. 1983). North Carolina's statutory interest rate is 8% per year. N.C. Gen Stat. § 24-1.

The Court, in its discretion, awards prejudgment interested based on Executor's calculation of the legal rate of interest from June 12, 2009, (the date of filing of his third-party complaint) to June 15, 2010, at $18,067.29, with additional interest of $49.10 per day from June 16, 2010 until the date of entry of judgment.

    iii.    *Punitive damages for wanton and willful negligence*

Through the well-pleaded factual allegations of the complaint and additional submissions to the Court, Executor has made a sufficient showing of wanton and willful conduct to support the additional award of punitive damages on his NCGFSA claim. Unless otherwise provided by statute, a North Carolina civil claimant may receive punitive damages only by proving fraud, malice or willful and wanton conduct "related to the injury for which compensatory damages were awarded." N.C.G.S. § 1D-15(a). Furthermore, "the claimant must prove the existence of an aggravating factor

by clear and convincing evidence." N.C.G.S. § 1D-15(b). Willful injury requires "actual knowledge[] of the peril to be apprehended, coupled with a design, purpose, or intent to do wrong and inflict injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom." Estate of Purkey ex rel. Purkey v. U.S., 299 F. Supp. 2d 539, 542-43 (W.D.N.C. 2004) (quoting Hoots v. Pryor, 417 S.E.2d 269, 276 (N.C. App. 1992)).

As early as September 2005, NTA recognized its error in failing to record the deeds and designated its file on the transaction as a "problem file." Numerous database entries over the next eighteen months repeatedly warned that neither deed had been recorded. (Doc. No. 61-2.) Despite these file notes (including a telling April 2007 entry which reads "not on record; original lost"), NTA-C took no action to record as required by the NCGFSA. An employee of NHC who served as NTA-C's operations manager from 2002 to 2007 acknowledged in deposition testimony that recordation was "critical" and that recording failures put title at risk. (Doc. No. 123, Def.'s Mem. Supp. Default J., 10.) Thus, the Court finds that NTA-C's awareness of potential consequences of inaction sufficiently demonstrates reckless and indifferent conduct to justify punitive damages in the amount of $672,000.

*iv.  Treble damages under the NCUDTPA*

To state a claim for violation of the NCUDTPA, the claimant must allege an unfair and deceptive act or practice, in or affecting commerce, that proximately caused injury to the claimant. N.C.G.S. § 75.1-1; Blis Day Spa, LLC v. The Hartford Ins. Group, 427 F. Supp.2d 621, 634 (W.D.N.C. 2006); Defeat the Beat, Inc. v. Underwriters at Lloyd's London, 669 S.E.2d 48, 53 (N.C. App. 2008). Damages assessed for violation of N.C.G.S. § 75.1-1 are automatically trebled. N.C.G.S. § 75-16. However, where a successful plaintiff seeks both punitive and treble damages,

he cannot have both. Id. Counsel for Executor stated in open court during the hearing that Executor has elected to accept the higher award of punitive damages. The Court, therefore, denies the award of treble damages under section 75.1-1 *et seq.*, without addressing the merits of Executor's claim of unfair and deceptive practice by NTA-C.

  v.  *Credit for prior settlement*

NTA-C is entitled to a credit of $175,000 against Executor's damages from the prior settlement of the other Third-Party Defendants. Any amount of a judgment paid by a joint tortfeasor or other party "should be held for a credit on the *total recovery* in any action for the same *injury or damage*." Schenk v. HNA Holdings, Inc., 613 S.E.2d 503, 509 (N.C. App. 2005) (emphasis in original) (internal citations and quotations omitted).

Executor has requested that credit for prior settlement be applied to attorneys' fees, with the balance applied to punitive damages.[1] The Court is persuaded by "the common view among the majority of jurisdictions that because punitive damages are awarded not to compensate a plaintiff but to punish an individual wrongdoer, the 'one satisfaction' principle is not offended by a court's refusal to deduct settlement monies from a punitive damages award." Burgess v. Porterfield, 469 S.E.2d 114, 118 (W. Va. 1996). Thus, the prior settlement of $175,000, which is on record with the Court (Doc. No. 125) dictates that Executor's attorneys' fees and costs of $160,044.99 be entirely offset, and the Court will apply the remaining $14,955.01 to reduce the portion of compensatory damages (and *not* punitive damages) for which NTA-C is liable to $209,044.99.

As for the award of prejudgment interest, the North Carolina Court of Appeals has held that,

---

[1]Executor may have requested this application of the offset balance for fear that an offset to actual damages might result in a lower cap on punitive damages. However, "courts have usually rejected these and similar claims for adjustment in the punitive award, generally recognizing that punitive damages stand on an entirely different footing from . . . compensatory damages." 1 DAN B. DOBBS, LAW OF REMEDIES § 3.11(13) (2d ed. 1993).

where a co-defendant has previously paid a settlement against a portion of claimant's actual damages, this offset should include an interest credit on the settlement amount at the legal rate from the date of settlement until entry of judgment. Brown v. Flowe, 507 S.E.2d 894, 898 (N.C. App. 1998). Since the Court has already ruled that a portion of the settlement amount shall offset the compensatory damages, NTA-C is entitled not only to remaining portion of the settlement proceeds that offset compensatory damages ($14,955.01), but also to the interest on that amount at the statutory rate from the date settlement payment was due, July 2, 2010, until entry of judgment on July 9, 2010, for a total interest credit of $22.94. Therefore, Executor's award for compensatory damages is reduced from $224,000 to $209,022.05.

    *vi.    Postjudgment Interest*

"In contrast to the district court's discretion in the awarding of prejudgment interest, federal law mandates the awarding of postjudgment interest." Quesinberry v. Life Ins. Co., 987 F.2d 1017, 1031 (4th Cir. 1993); see also 28 U.S.C. § 1961. The Supreme Court has stated that "the purpose of postjudgment interest is to compensate the successful [party] for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the [opposing party]." Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835 (1990). Furthermore, "awarding post-judgment interest on the entire amount the court awarded . . . including prejudgment interest, most closely comports with the purpose of postjudgment interest articulated by the Supreme Court." Quesinberry, 987 F.2d at 1031. Therefore, Executor is entitled to postjudgment interest at a rate set pursuant to 28 U.S.C. 1961 for the total damages award stated herein.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Lane's Motion for Default Judgment is GRANTED. Executor is entitled to the following damages from NTA-C, less offset for prior settlement as noted:

1. Compensatory damages of $224,000, reduced to $209,022.05 by the prior settlement and interest credit;

2. Prejudgment interest in the amount of $19,245.69.

3. Attorneys' fees and costs of $160,044.99, which are completely offset by the prior settlement;

4. Punitive damages of $672,000; and

5. Postjudgment interest on the amount of $900,267.74 shall accrue beginning on the date of entry of this Order pursuant to 28 U.S.C. § 1961 until paid in full.

The Clerk of Court is hereby ordered to CLOSE THE CASE and terminate all pending deadlines.

IT IS SO ORDERED.

Signed: July 9, 2010

Frank D. Whitney
United States District Judge